**WO**                                                                                                              NN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Robert Hoff** and **Cathy Hoff**, husband and wife; **Action Acquisitions, L.L.C.**, an Arizona limited liability company,<br><br>  Plaintiffs,<br><br>vs.<br><br>**Hartford Fire Insurance Company**, a foreign corporation domiciled in Connecticut; **Hartford Underwriters Insurance Company** d/b/a **The Hartford**, a foreign corporation domiciled in Connecticut; **John and Jane Doe** 1-10,<br><br>  Defendants. | No. CV 06-1261-PHX-EHC<br><br>**ORDER** |

*Defendant Hartford Fire Insurance Company's Motion for Summary Judgment* ("DMSJ") (Dkt. 46) was filed July 30, 2007. *Plaintiffs' Motion for Partial Summary Judgment on the Homeowners Insurance Coverage Issue* ("PMSJ") (Dkt. 48) was filed July 31, 2007. Both motions have been fully briefed.

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "when there is no genuine issue of material fact" such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In determining whether to grant summary judgment, a district court must view the underlying facts and the inferences to be drawn from those facts in the light most favorable to the

nonmoving party. See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

If a party will bear the burden of proof at trial as to an element essential to its claim, and fails to adduce evidence establishing a genuine issue of material fact with respect to the existence of that element, then summary judgment is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Not every factual dispute is capable of defeating a properly supported motion for summary judgment. Rather, the party opposing the motion must show that there is a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if the evidence is such that a rational trier of fact could resolve the dispute in favor of the nonmoving party. Anderson, 477 U.S. at 248. A fact is material if determination of the issue might affect the outcome of the case under the governing substantive law. Anderson, 477 U.S. at 248. Thus, a party opposing a motion for summary judgment cannot rest upon bare allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue for trial. See Anderson, 477 U.S. at 250. If the nonmoving party's evidence is merely colorable or not significantly probative, a court may grant summary judgment. See Anderson, 477 U.S. at 249; see also Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, 818 F.2d 1466, 1468 (9th Cir. 1987).

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Breach of Contract Claim

#### 1. Facts

On April 7, 2006, Plaintiffs filed a Complaint alleging Breach of Contract and Declaratory Relief in Count 1, and Bad Faith and Breach of Covenant of Good Faith and Fair Dealing in Count 2. (Dkt. 1, Ex. A).

The following facts are not in dispute unless indicated otherwise:

Defendants ("Hartford") issued an insurance policy ("policy") with a coverage period of February 27, 2004 through February 27, 2005 for Plaintiffs' house located in Phoenix. (*Defendant Hartford Fire Insurance Company's Statement of Facts in Support of its Motion*

*for Summary Judgment* ("DSOF") (Dkt. 47) ¶ 2). Plaintiffs had purchased the home from a Sheriff's foreclosure sale on April 24, 2003. (DSOF ¶ 5, Exh. 3). Lorne Willment, ("Lorne") the previous owner, contested the foreclosure and sued the Homeowners Association ("HOA")[1] in Maricopa County Superior Court, CV 2002-091967. (DSOF, Exh. 4). The court denied Lorne's Motion to Set Aside Default Judgment and Sheriff's Sale on January 13, 2004. (DSOF, Exh. 4).

Plaintiffs' son, Brian Hoff ("Brian"), contacted police on April 24, 2004, and a police report was filed for theft and property damage to the house. (DSOF ¶ 3, Exh. 3). Brian had witnessed two males stealing plants from the front yard and loading them into a minivan. (DSOF ¶ 8, Exh. 6, p. 41, line 13 - p. 42, line 20). The men told Brian they worked for Lorne. (DSOF ¶ 9, Exh. 3). According to the police report, suspect Lorne was responsible for "removing appliances, interior fixtures, and exterior plants and landscaping." (DSOF ¶ 4, Exh. 3). After going inside the property, Brian reported that the house was "gutted" with extensive items missing. (DSOF ¶ 10, Exh. 3, Exh 6, p. 14, lines 11-21). In his deposition, Brian testified that "other than smashed marble from a bathroom and pieces of kitchen countertop granite, he could not describe in any detail what items were in the property" prior to the theft and vandalism. (DSOF ¶ 27, Exh. 6, p.13, lines 8-17). Also, Brian did not know when Lorne moved out of the house. (DSOF ¶ 16, Exh. 6, p. 31, lines 10-18), nor "whether the loss occurred at one time or was an accumulation of damages over time before the house was conveyed."(DSOF ¶ 28, pp. 13-18).

Hartford claims adjustor Stoutenburg inspected the loss on April 28, 2004. (DSOF ¶ 12). On June 18, 2004[2], Stoutenburg denied coverage for the theft of plants.[3] (DSOF ¶ 18,

---

[1] The foreclosure was initiated by the HOA because Lorne was behind in his HOA payments by thousands of dollars.

[2] Although Hartford alternately cites the date of this letter as being in 2006 and 2007 in ¶ 18, the Court ascertained from the exhibit itself that the year was 2004. (DSOF ¶ 18, Exh. 10).

[3] Plaintiffs do not contest the denial of coverage for the stolen plants.

- 3 -

Exh. 10). In the same letter, he stated he could not determine the condition of the property when Plaintiffs assumed an insurable interest. (DSOF ¶ 18, Exh. 10). He concluded "he was unable to file additional claims for Plaintiffs since they could not determine what specific items were taken or when." (DSOF ¶ 19, Exh. 10).

Hartford alleges that Brian "had never seen the inside of the house before the date police investigated the theft," according to his deposition. (DSOF ¶ 7, Exh. 6). Hartford reiterates this by citing to Brian's recorded statement. (DSOF ¶ 15, Exh. 8). Plaintiffs do not dispute this fact, but they challenge Hartford's conclusion which they derive from that fact: Hartford investigator Patti Kratzke "questioned how Plaintiffs knew when the actual damage occurred since they became the owner of the property on October 24, 2003 but never did a walk through of the property until discovering the damage on April 23, 2004." (DSOF ¶ 14, Exh. 8).

Plaintiffs counter that insured Plaintiff Robert Hoff ("Robert") testified in his deposition that he had been inside the house once, in December 2003, before the house was damaged. (*Plaintiffs' Controverting Statement of Facts in Support of Their Response to Defendant's Motion for Partial [sic]*[4] *Summary Judgment* ("PRSOF") (Dkt. 53) ¶ 2, Exh. 1, pp. 15-17). Robert also described the damage to the house in his testimony. (PRSOF ¶ 2, pp. 22-23).

Hartford also alleges Robert Hoff testified in his deposition that he had no specific recollection of "*what or when* anything was taken from the house . . ." (DSOF ¶ 26; Exh. 13, p. 21, lines 3-5) (emphasis added). Plaintiffs argue Robert "did not testify that he had no recollection of *what* was taken from the house. Rather, he testified that he did not know specifically *when* the items were taken." (PRSOF ¶ 4, Exh. 1, p. 21, lines 3-5).

The PRSOF includes an additional statement of facts relevant to their response. (PRSOF ¶¶ 13-27). They are summarized as follows:

---

[4]Defendants did not file a motion for partial summary judgment, but rather a motion for summary judgment.

- 4 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- The policy limit for liability is $400,000 and paid for a "Landlord's Optional Coverage Endorsement" of $500,000. (PRSOF ¶ 13).
- Brian received a telephone call from a neighbor who indicated that fixtures of the property had been removed. This prompted Brian to call the police and go to the house where he witnessed the two men pulling plants out of the ground. (PRSOF ¶ 14).
- Plaintiffs discovered that the house had been "completely stripped from the inside." Plaintiffs allege the following was removed: all appliances, shelves; sinks, light fixtures; baseboards; metal air vents; molding around doors; interior doors; pipes in the shower (torn out by someone cracking through the tile); the bathtub (including pipes, "leaving a huge hole in the floor." (PRSOF ¶ 15).
- Lorne occupied the house at the time the property was damaged. (PRSOF ¶ 16).
- Kratzke recorded Brian's statement which included a description of the property damage in detail. (PRSOF ¶ 17).
- Kratzke recorded Robert's statement which included a detailed description of the loss. He offered to walk Kratzke through the house, and estimated that the damage ocurred with the six weeks prior to April 23, 2004, when the damage was discovered. (PRSOF ¶ 18).
- Hartford interviewed the neighbor who called Brian, Sal Sendick. On April 20, 200, 2004, after returning from vacation, he observed, from his upstairs porch that looks down onto the property, that the window blinds had been removed and he could see the plumbing fixtures had been ripped off the walls. (PRSOF ¶ 19).
- Sendick estimated the damage was done after March 20, 2004. (PRSOF ¶ 20).
- "While Sal Sendick was on vacation (from March 20 through April 20) his neighbor Kathleen Dudek witnessed damage to the house. (PRSOF ¶ 21).
- Stoutenburg arbitrarily denied the policy claim "on the assumption that the removal of the property was 'methodical' and occurred over a period of time." (PRSOF ¶ 22).
- Plaintiffs' attorney sent a demand letter to Hartford on August 6, 2004. (PRSOF ¶ 23).

- 5 -

1   • Stoutenburg sent a second denial letter indicating Hartford would not cover claims for
2     'multiple events or a systematic removal of property over time.' He added that he
3     could only address the stolen plants and shrubs on April 23, 2004. (PRSOF ¶ 24).
4   • Plaintiffs allege Stoutenburg stated in his letter that because they could not prove a
5     specific date for the rest of the damage to the house, they were denied
6     coverage.(PRSOF ¶ 25).
7   • Plaintiffs argue that they had complied with the policy's requirements: they described
8     what had been stolen and damaged and it was readily apparent by a simple inspection
9     of the property. Plaintiffs owned the property and the deed is a matter of public
10    record. Robert and neighbor Sendick provided an approximate time frame when the
11    theft and vandalism took place. (PRSOF ¶ 26).
12  • Plaintiffs allege Hartford ignored the "ample evidence" in this case.

### 2. Analysis

"In order to establish a prima facie case, [the insured] must prove the insurance policy, the happening of the insured event, and the giving of notice as provided in the policy." Pac. Indem. Co. v. Kohlhase, 9 Ariz.App. 595, 597, 455 P.2d 277, 279 (App. 1969) (citations omitted). Proof of the insurance policy and the giving of notice are not disputed. The occurrence of the insured event is the disputed issue.

Hartford alleges the "Plaintiffs have never been able to establish the condition of the Property at the time they assumed an insurable interest in it, what specific other fixtures, appliances or parts of the Property were taken, and when those items were actually taken." (DMSJ, p. 5).

Although reasonably refuted by Plaintiffs, Hartford insists that Plaintiffs admitted they had never entered the insured premises before the theft and vandalism occurred. (*Defendants Hartford Insurance Company and Hartford Underwriters Insurance Company's Reply in Support of Their Motion for Summary Judgment* ("Defendants' Reply") (Dkt. 54), p. 2). Hartford goes so far as to say that the "question to this day remains unanswered by Plaintiffs." (Defendants' Reply , p. 2). Robert's deposition indicates he walked through the

1 property premises in December 2003 and described the interior. (PRSOF ¶ 2, Exh. 1, pp. 15-17. It is further discussed in Brian's recorded statement taken by Hartford's own investigator, Patti Kratzke, found in Hartford's exhibits. (DSOF, Exh 8, p 4)..

Hartford alleges that Plaintiffs characterize the damage to the home as "vandalism," which is not covered in their policy. (Defendant's Reply, p. 2). Hartford argues that Plaintiffs are incorrect when they assert that the policy covers a vandalism claim and asserts that "[t]his flies in the face of the express language of the Hartford policy." (Defendant's Reply, p. 2). Disconcertingly, this is false. The policy excludes "vandalism and malicious mischief . . *if the dwelling has been vacant for more than 30 consecutive days immediately before the loss.*" (DSOF, Exh. 2, p. 7) (emphasis added).

However, the police report describes the incident as a "theft." (DSOF, Exh. 3, p. 1). Also, Hartford's own Activity Log Notes reflect the following entries by their adjustor: "Tenant took kitchen cabinets, sink, toilet, shower, bathtub, baseboard, pool equipment. Counter tops were smashed in garage. Doors in whole house were taken, shandeleer [sic], etc." (DSOF, Exh. 7, p. 1); "Received and reviewed insd's [insured's] GC's estimate: $131,862." (DSOF, Exh. 7, p. 3); and finally, "I inspected yesterday. This is a whole-house vandalism, where former owner (repossessed) stole/removed all cabinets/counters and even doors/baseboards. This may be a large loss due to the property being premium grade (all travertine tile 1,818 sf) and marble or granite counters, etc." (DSOF, Exh. 7, p. 4).

Therefore, contrary to Hartford's contention, Plaintiffs have been able to establish the condition of the Property at the time they assumed an insurable interest in it; Robert had walked through the house before the theft/vandalism occurred and described it. Hartford's claim that Plaintiffs could not specify the fixtures, appliances or other parts of the Property which were taken is also incorrect; the police report, Robert's description of the property, and Hartford's adjustor's own notes describing the damage to the house reflect more than sufficient information to ascertain what was stolen and damaged. Lastly, when those items were actually taken have been proffered by Robert and neighbor Sal Sendick that it occurred somewhere between March 20, 2004 and April 20, 2004.

In light of the Court's duty to view the underlying facts and the inferences to be drawn from those facts in the light most favorable to the nonmoving party, Hartford has not succeeded in establishing that there is no genuine issue of material fact. See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**B. Bad Faith Claim**

**1. Facts**

Hartford alleges that Robert admitted he had "no evidence that Hartford instituted programs or policies to reduce claim payments or to reward and encourage a reduction of indemnity payments"; no evidence "showing that Hartford unfairly or arbitrarily reduced payments on legitimate claims to attain reduction goals and increase profits."; "no evidence that Hartford or any of its representatives made any false or misleading statements or engaged in fraud, trickery, or deceit in connection with his claims"; and "no evidence whatsoever that Hartford breached its duty of good faith and fair dealing owed to anyone in connection with Plaintiffs' claims." (DSOF ¶¶ 34-37). Hartford also alleges that Robert's son, Brian, "likewise testified that while he believes the claim was wrongfully denied, he has no such evidence." (DSOF ¶ 38). Plaintiffs argue that Robert's lack of firsthand knowledge of how Hartford breached its duty of good faith is irrelevant. (PRSOF ¶ 11).

**2. Analysis**

The thrust of Plaintiffs' allegation of bad faith is a charge in their Complaint that Hartford has "instituted a program to reduce its claim payments to insureds in Arizona." (Complaint, ¶ 47). Plaintiffs allege this program operates as follows: Hartford "has established programs or policies that reward and encourage the achievement of corporate goals for the reduction of indemnity payments"; "has established programs or policies that use indemnity payment reduction goals and cost containment procedures as a method of profit-making"; "has established programs or policies to minimize payment on claims and maximize profits and engaged in unfair and unlawful practices resulting in inadequate settlement values or denials of legitimate claims; and did not disclose that claims may be subjected to those goals. (Complaint, ¶¶ 48-51). They further allege that Hartford "made

- 8 -

1 false and misleading representations and omissions to Plaintiffs and the public; engaged in
2 a corporate plan of fraud, trickery and deceit and using delay, oppression and intimidation
3 to force insureds to accept lower benefits; and breached its duty of good faith and fair
4 dealing. (Complaint, ¶¶ 53-55). Lastly, Plaintiffs allege that Hartford has engaged in similar
5 practices with other insureds; ignored Plaintiffs' interests, depriving them of benefits and
6 services; maintains practices that are "fundamentally lacking in honesty and fairness"; carried
7 out its "plan, scheme, and design" to increase profits; and did so "willfully, oppressively,
8 deceptively, with conscious disregard" of Plaintiffs' rights, with "the intent to harm or injure"
9 Plaintiffs. For those reasons, Plaintiffs request that Hartford be assessed punitive damages.
10 (Complaint, ¶¶ 56-60).

11 Careful consideration of all the facts do not reflect any evidence at all of a program
12 or policy instituted by Hartford to reduce claim payments to the general public. All of the
13 facts offered by Plaintiffs pertain exclusively to Plaintiffs' claim. Hartford argues that
14 Plaintiffs' bad faith claim relies on "unfounded speculation and mere suppositions." (DMSJ,
15 p. 9). The Court agrees. A party opposing a motion for summary judgment cannot rest upon
16 bare allegations or denials in the pleadings, but must set forth specific facts demonstrating
17 a genuine issue for trial. See Anderson, 477 U.S. at 250. Plaintiffs have arguably offered
18 a colorable claim of bad faith but that is not sufficient. See Anderson, 477 U.S. at 249 (If the
19 nonmoving party's evidence is merely colorable or not significantly probative, a court may
20 grant summary judgment). Even viewing the underlying facts and the inferences to be drawn
21 from those facts in the light most favorable to the nonmoving party, Plaintiffs' argument
22 fails. See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

23 **III. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

24 Plaintiffs move for summary judgment solely on its breach of contract claim.
25 Plaintiff's facts in this case have already been reviewed.

26 Hartford, as the nonmoving party, must "identify with reasonable particularity the
27 evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir.
28 1996) (quoting Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995), and noting

that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the nonmoving party fails to make this showing, the moving party is entitled to judgment as a matter of law. See Celotex, 477 U.S. at 323. The Local Rules of Civil Procedure also state this requirement. See LRCiv. 56.1(b) (2007) ("Any party opposing a motion for summary judgment shall file a statement . . . setting forth . . . a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed."[5]).

Hartford has failed to do this. They throw too many facts into one paragraph that refer to a variety of different portions of the record, ostensibly responding to the correspondingly numbered paragraph in *Plaintiffs' Statement of Facts in Support of Their Motion for Partial Summary Judgment on the Homeowners Insurance Coverage Issue* ("PSOF") (Dkt. 49). It is not the duty of the Court to wade through the numerous extraneous facts included in each paragraph in *Defendant Hartford Fire Insurance Company's Responding Statement of Facts in Opposition to Plaintiffs' Motion for Partial Summary Judgment on the Homeowners' Insurance Coverage Issue* ("DRSOF") (Dkt. 51). The Court's attempts to do so reveal that most, if not all, of the assertions do not even address the material facts alleged in the PSOF.

Moreover, most of the sentences are unnecessarily repeated several times over several paragraphs. For instance, Hartford contends five times that "Brian Hoff had never seen the inside of the house before the date police investigated the theft." (DRSOF ¶¶ 1-5). Hartford alleges eight times that "Patti Kratzke [Hartford's investigator] obtained a recorded statement from Brian Hoff with his attorney Dan Kloberdanz, wherein he admitted he had never been in the residence prior to finding the damage."(DRSOF ¶¶ 7-14). These two statements allege the same thing, that Brian Hoff did not know what the house looked like prior to discovering the damage in the house. What is particularly troubling is that this undisputed fact is

---

[5]Both parties have failed to adhere to the local rules in this regard. See LRCiv. 56.1 (2007).

- 10 -

immaterial. Hartford apparently attempts to mislead the Court by repeating this fact thirteen times without ever mentioning that in their own briefs and statements of facts, Robert Hoff's deposition and Brian's recorded statement, obtained by Hartford's own investigator, Patti Kratzke, indicate that Robert, the insured Plaintiff, *did* walk through the house before the house was damaged. There are many more assertions repeated incessantly and not relevant to the corresponding paragraph in the PSOF.

"Each numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts shall, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment *if not specifically controverted* by a correspondingly numbered paragraph in the opposing party's separate statement of facts."LRCiv. 56.1(b) (2007) (emphasis added). The Court deems the PSOF admitted for purposes of this motion, and incorporates the same herein.

### IV. CONCLUSION

The Court finds that Defendants have failed to show the absence of a genuine issue of material fact in Plaintiffs' breach of contract claim but have succeeded in doing so in Plaintiffs' bad faith claim. Furthermore, the Court finds that Plaintiffs have shown there is no genuine issue of material fact with regard to the breach of contract claim, such that they are entitled to judgment as a matter of law.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 46) is **granted in part** and **denied in part:**

Defendants' Motion with regard to the breach of contract claim in Count 1 is **denied.** Defendants' Motion with regard to the bad faith claim in Count 2 is **granted.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Dkt. 48) is **granted.**

DATED this 31st day of March, 2008.

*/s/ Earl H. Carroll*
Earl H. Carroll
United States District Judge

- 11 -